IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| BONNIE R. WOODMAN, | ) | |
| | ) | |
|         Plaintiff, | ) | Civil Case No. 07-1276-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|         Defendant. | ) | |
| | ) | |

David B. Lowry
9900 S. W. Greenburg Road
Columbia Business Center, Suite 235
Portland, Oregon 97223

        Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Britannia I. Hobbs
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Page 1 - OPINION AND ORDER

David Morado
Regional Chief Counsel
Leisa A. Wolf
Special Assistant Untied States Attorney
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Bonnie Woodman brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner and remand for further proceedings.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of

Page 3 - OPINION AND ORDER

"not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ assumed without concluding that Woodman had severe impairments of eye problems and pain disorder. However, the ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations. After a review of Woodman's medical history, the ALJ found that she was not fully credible. He also

discounted some of the medical opinions.  Because there was a period during which Woodman had no reported earnings but claims to have worked 84 hours a week, the ALJ extensively examined which of her past jobs could be considered past relevant work.  Finally, the ALJ determined that Woodman could perform her past relevant work as a window clerk and thus was not disabled as defined by the Act.

## FACTS

Woodman, who was 54 years old at the time of the ALJ's opinion, had a high school education and work experience as a post office window clerk, store owner of a packing and shipping store, cattle farmer, legal secretary, and housecleaner.  Woodman alleges that she became disabled on December 21, 2001 due to bouts of severe eye pain and blurred vision.

Woodman began having problems with her vision in 1998.  She has been diagnosed with glaucoma and has had surgery on each eye.  Even after the surgery reduced her eye pressure to normal, Woodman suffers from eye pain constantly.  At the first hearing on July 3, 2003, Woodman described her pain as eight or nine out of ten, without medication.  About 40 percent of the time, the eye pain is so severe that she cannot function.  Woodman uses medical marijuana daily to dull the pain.  Although numerous ophthalmologists and neurologists have examined Woodman, no one is able to determine why she feels eye pain.

In addition to the eye pain, Woodman suffers from double and triple vision at times and from headaches three to five times a week, lasting three to six hours, with pain levels of five and six on a scale of ten.

Woodman also complains about emotional problems, including anxiety, difficulty sleeping, difficulty concentrating, panic episodes, and depression.  In addition, Woodman

Page 5 - OPINION AND ORDER

complains of pain in her right elbow, dizziness, severe allergies, weight loss, difficulty lifting, burning sensations in her hips, incontinence, lack of stamina and strength, lack of sensation in three fingers on both hands, and depth perception difficulties which cause her to fall.

Woodman must break up working on tasks with small rest periods because she has no stamina. She has to take a break every 15 to 45 minutes. Woodman no longer reads for pleasure, does needlework, sews, or does craft work, and writes as few letters as possible. Her recipes have been transcribed to larger sheets of paper with bigger print. Woodman lives with her husband. She cooks and does half of all household chores. Her husband does most of the grocery shopping because Woodman has difficulty reading labels. Woodman pays the bills, goes to a gym three days a week, watches television for about four hours a day, gardens for an hour a day, and uses the Internet for 30 minutes a day. At the time of the hearing on April 11, 2005, Woodman was taking an on-line medical transcription class for which she spends one to two hours a day at the computer. Woodman can drive but usually lets her husband do the driving.

## DISCUSSION

I.   Rejection of Physician's Opinions

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the

opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

    A.    Dr. Barry

Woodman contends that the ALJ improperly rejected the moderate limitations Dr. Barry imposed in a mental Residual Functional Capacity ("RFC") assessment on February 13, 2004. Woodman argues that there is no reason why the ALJ should give more weight to Dr. Patrick's opinions than to Dr. Barry's opinions, that the moderate limitations were not inconsistent with the GAF of 61, and that Woodman's failure to pursue significant mental health treatment should not be used against her.

On the mental Residual Functional Capacity assessment, Dr. Barry noted that Woodman was moderately limited in: (1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (3) the ability to accept instructions and respond appropriately to criticism from supervisors; and (4) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

When analyzing Dr. Leveque's statement that Woodman's eyes gave out when she typed for him, the ALJ gave greater weight to Dr. Barry's conclusion that Woodman was not totally and completely unemployable, from a purely psychological perspective. The ALJ noted that Dr. Barry had carefully examined Woodman and supported his assessment with adequate objective psychological findings. The ALJ went on to discredit Dr. Barry's mental RFC assessment because it was inconsistent with his evaluation performed three months earlier and was inconsistent with Dr. Patrick's evaluation performed one month earlier.

Dr. Barry, who administered the MMPI-2 to Woodman in addition to interviewing her, found that Woodman had a GAF of 61. The GAF range of 61-70 indicates mild symptoms and some difficulty in functioning. The GAF range of 51-60 indicates moderate symptoms and moderate difficulty in functioning. Dr. Barry also noted that Woodman's impairments were not significant or severe enough to make her totally unemployable. The ALJ appears to be most bothered by the GAF assignment of 61, indicating mild difficulties, in comparison to the moderate limitations Dr. Barry noted in the mental RFC assessment. I note that GAF 61 is the lowest point in the mild range. I also note that the moderate limitations in the mental RFC assessment are not inconsistent with not being "totally" unemployable. Thus, the relied-upon inconsistency within Dr. Barry's report does not exist and cannot be a legitimate reason supported by the record.

Dr. Patrick examined available records, clinically interviewed Woodman, and performed a mental status examination but did not perform any formal testing. Dr. Patrick deemed Woodman mildly impaired in several areas and noted that she had moderate difficulty engaging

in appropriate social interaction but does so adequately as shown by the fact that she enjoyed social interaction with her housekeeping clients.

The regulations state: "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(3). Because Dr. Barry administered the MMPI-2, his opinion is better supported by laboratory findings.

The ALJ also noted that Woodman did not pursue any significant mental health treatment, and discontinued Prozac on her own decision. This is not a legitimate reason to reject mental limitations, particularly when the limitations are proposed by a medical source. "[A]ppellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (internal quotation omitted).

Thus, the ALJ's rejection of Dr. Barry's moderate limitations is supported only by the fact that Dr. Patrick disagrees. As noted above, Dr. Barry's opinion is better supported by the more extensive testing he performed. I do not believe that the administration of formal testing is required to support an opinion, but when there are no other reasons to support rejecting the better supported opinion, I am troubled. I conclude that the ALJ's rejection of Dr. Barry's moderate limitations was not supported by specific and legitimate reasons supported by substantial evidence in the record. Consequently, Dr. Barry's moderate limitations should have been included in Woodman's RFC.

B.  Dr. Walker

Woodman argues that the ALJ improperly rejected Dr. Walker's opinion by misinterpreting Dr. Walker's stated cause of her eye pain. Dr. Walker is Woodman's primary care physician. On October 5, 2002, Dr. Walker executed an affidavit stating that Woodman has seen him on many occasions with symptoms of ocular pain which are consistent with angle closure episodes versus migraine headaches versus unspecified neuralgia. He also stated that the chronic eye pain was a contributing factor to her inability to keep up with the demands of a small business. Tr. 342.

The ALJ noted that various eye specialists noted no ocular cause for Woodman's alleged eye pain and even Dr. Walker had examined Woodman and found no evidence of inflammation and normal eye pressures. The ALJ gave no significant weight to Dr. Walker's opinion about Woodman's chronic pain and difficulties continuing working.

The cause of the eye pain is not relevant to Woodman's RFC. Thus, any error concerning whether the pain is from angle closure episodes or migraine headache or unspecified neuralgia is harmless. Dr. Walker's second statement–that eye pain was a contributing factor to Woodman's inability to keep up with the demands of a small business–is very general and does not express any limitations other than possibly concerning the pace at which Woodman can work. This was much more specifically addressed by Dr. Barry's first and second moderate limitations. Consequently, I also find that any error made by the ALJ concerning the second of Dr. Walker's statements is also harmless.

II.        Lay Witness Testimony

Woodman contends that the ALJ improperly rejected the lay testimony of her husband, several of her friends, and Dr. Leveque, for whom Woodman worked in 2002. She argues that their observations are not contrary to the medical evidence because, in addition to Dr. Walker's opinion, the ALJ himself determined that she had severe impairments of eye problems and pain disorder.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. Stout v. Commissioner of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ listed the various lay witness statements that he had considered and stated that psychologists and neurologists have described Woodman as dramatic and histrionic in her presentation and that physicians and ophthalmologists concluded that there were no bases for Woodman's allegations of pain. Thus, even though the lay witnesses were accurately reporting what they saw, Woodman's personality factors are a germane reason to discount the testimony.

I will discuss Dr. Leveque separately. He stated that Woodman would type for him, her eyes would give out and were painful, her vision would fail. Dr. Leveque concluded that Woodman could no longer work as a legal secretary and was unemployable for close, fine work. The ALJ gave Dr. Leveque's opinion no weight because there were no treatment records from Dr. Leveque.

I agree with Woodman that Dr. Leveque's opinion should have been treated as a lay opinion and not as a medical source. The ALJ failed to do so.

"[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

If I fully credit Dr. Leveque's testimony, limitations would have to be added to Woodman's RFC. Thus, I cannot consider the error harmless. The ALJ needs to address Dr. Leveque's lay testimony.

III.     Remedy

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001). If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Id.

Here, the ALJ determined that Woodman has no exertional or non-exertional limitation to perform work activities. He erred, however, by not including in the RFC Dr. Barry's moderate limitations. Further, the ALJ must consider Dr. Leveque's lay testimony and whether additional limitations must be added.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit

evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited.  Id.  If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence.  Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).

Vocational testimony is needed based on a hypothetical question specifying all of Woodman's limitations and restrictions.  Based on the fact that several medical sources were considering pain disorder, conversion disorder, and somatoform disorder as the root of Woodman's problems, I suggest the ALJ arrange for additional in-depth psychological testing.  I also note the record contains medical reports obtained after the ALJ's opinion and sent to the Appeals Council:  psychiatrist Dr. Gribble's chart note of April 11, 2006 mentioning that Woodman just had one cataract surgery and was scheduled for the second.  Thus, her eye condition may not be fully understood.  The record is not complete enough for me to determine that Woodman must be found disabled.

///

///

///

Page 13 - OPINION AND ORDER

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

Dated this      21st       day of July, 2008.

    /s/ Garr M. King
Garr M. King
United States District Judge